BY THE

## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

### MARCH TERM, 1905.

---

## POWELL, Appellant, v. PRICE, Respondent.

### St. Louis Court of Appeals, March 7, 1905.

**PEREMPTORY INSTRUCTION.** In an action on a note for the purchase price of an organ, where the defense was a plea of *non est factum*, the evidence is examined and held that the refusal by the trial court of a peremptory instruction to find for plaintiff was error.

Appeal from Madison Circuit Court.—*Hon. Robt. A. Anthony*, Judge.

REVERSED AND REMANDED (*with directions*).

*H. Clay Marsh* for appellant.

*E. D. Anthony* for respondent.

### STATEMENT.

Plaintiff sued defendant before a justice of the peace on the following promissory note:

"$90,00.      Post Office, Fredericktown, Mo., 2-26, 1902.

"For value received I promise to pay to the order of W. W. Kimbal Co. (incorporated) Chicago, Ill., with exchange, ninety dollars, payable at Madison County Bank, Fredericktown, Mo., as follows: $10 cash, balance $80 in one year from date, with interest at the rate of six per cent per annum until paid. The drawers and in-

(320)

dorsers severally waive presentment for payment, protest and notice or non-payment of this note.

                    "JAMES PRICE."

On the back of this note was written the following assignment:

" Pay to J. E. B. Powell,
            "W. W. KIMBAL COMPANY."

Plaintiff lost in the justice's court and appealed to the circuit court where the verdict was again against him, and he appealed to this court. The defense was a plea of *non est factum* under oath.

Plaintiff testified that he sold defendant an organ and, in part payment, took the note sued on and a chattel mortgage on the organ to secure the same, both of which he stated the defendant signed and delivered to him, after reading them, and that the note was assigned to him for value by the Kimbal Company.

John Tawfall testified that he was present at defendant's house when the trade for the organ was made and witnessed the transaction; that plaintiff bought the organ and he saw him sign the note in suit.

Mrs. Tawfall testified that she heard very little about the purchase of the organ, the sale having been almost completed before she arrived at defendant's residence that morning; what she heard being mostly about signing the note and mortgage; that she saw Mr. Price sign the note and discovered from the conversation that he had purchased an organ; that she recognized the signature to the note sued upon as that of Mr. Price, and that he said to her while they were all upstairs looking at the organ; "You haven't got ahead of me with your organ. I didn't intend to buy any organ now; I haven't got the furniture to match, and aint fixed up to buy an organ, but I can get the organ and can get the furniture afterwards to match the organ."

Defendant testified that he signed the note but when he signed it he thought it was a receipt for the organ;

that plaintiff said: "O well then, now, just sign this paper, this organ receipt, and if you don't want the organ, I want to leave it here a couple of weeks among the people to see what kind of stuff I am handling. Well, I will just leave you sign this receipt, if you don't want the organ, and I will come and get the organ and it won't cause you any trouble." Defendant further testified that he did not know he had signed a chattel mortgage at the time he signed the note, could not remember signing his name but once, but admitted his signature to the chattel mortgage was genuine. Defendant stated that he did not intend to sign a note and a chattel mortgage too; that he could read writing a little but not very well.

On cross-examination, defendant admitted that he promised to leave five dollars at the Security Bank for plaintiff and that he went to the bank to leave it for him but when he got there he had forgotten plaintiff's name. The following evidence is also found in defendant's cross-examination:

"Q. Because he had sold you an organ you promised to leave $5 there in payment according to the terms of that note? A. He kept on talking and going on and I was about half sick that morning and I kept insisting that I didn't want the organ, and I done that to get rid of Mr. Powell.

"Q. You finally purchased it to get rid of him? A. I seen I had to get some plan.

"Q. Did you purchase it to get rid of him? A. I suppose I did.

"Q. He talked to you fairly about the matter? A. No, sir, but I talked very squarely to him. I told him several times that I did not need an organ. I told him this: I said, if I want an organ I want to get around where there are several organs, so I can have my pick of them.

"Q. You kept that organ there in your house a year and more? A. Well, but I was to keep it a year.

If I didn't want it he was to come and get it.

"Q. Did he tell you that you could keep it a year? A. That is what he said.

"Q. He let you have the use of it all that time without charging you anything for it? A. I don't know whether he made that remark or not. I didn't use the organ; it set there in the house, and I told him he was just pushing something on me that I didn't need."

Defendant testified that neither he nor any of his daughters, nor any member of his family could play on the organ, but said that he and some of his daughters did play on it "a little" after it was left in the house.

Plaintiff moved the court to instruct the jury as follows, which the court refused:

"The court instructs the jury that according to the law and the evidence introduced in this case your verdict should be for the plaintiff, J. E. B. Powell."

BLAND, P. J. (after stating the facts).—If it be conceded that the defense made at the trial was permissible under the plea of *non est factum,* yet the jury should have been directed to find for plaintiff. Defendant's evidence that he did not purchase the organ came in a half-hearted way and wound up by an admission that he did purchase it. He was perhaps over persuaded by plaintiff to make the purchase and it may have been an improvident one for him to make, but that he made it and executed the note sued on for a part of the purchase price is made to plain by all the evidence to admit of any doubt, and the court should have directed the jury to find for plaintiff.

The judgment is reversed and the cause remanded with directions to enter up judgment for plaintiff for the balance due on the note.

All concur.